# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01317-COA

**KEDARIOUS DEZWUAN WILLIS A/K/A**          **APPELLANT**
**KEDARIOUS D. WILLIS A/K/A KENDARIOUS**
**WILLIS**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2018 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED -10/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Kedarious Dezwuan Willis (Willis)[1] and his uncle Michael Shantez Willis (Michael)[2] were jointly indicted on one count of aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014) and one count of conspiracy to commit aggravated assault in violation of Mississippi Code Annotated section 97-1-1 (Rev. 2014)

---

[1] Willis is sometimes referred to by the nickname "Day Day" in the record.

[2] Michael is sometimes referred to by the nickname "Little Mike" in the record.

by the grand jury of Copiah County. During trial, the circuit court granted the defendants' motion for a directed verdict on the charge of conspiracy to commit aggravated assault. However, the jury later found Willis and Michael guilty of aggravated assault. Willis was sentenced to fourteen years in the custody of the Mississippi Department of Corrections, with eight years to serve, followed by six years of post-release supervision with three years reporting. Willis filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. Willis appeals. After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On December 2, 2017, Travell Moore[3] was shot following a confrontation he had with Willis and Michael. Patricia Ford was the first of two eyewitnesses to testify. At trial, Patricia testified that she saw Moore and Michael arguing and walking down the street toward her house. Patricia testified that as they approached her house, she saw Willis, who was standing in the next yard, pull a gun and shoot Moore as he turned away and tried to run. Moore fell in her driveway after being shot, and Patricia testified that she applied a towel to the bleeding and waited for the ambulance. Patricia also stated that she was certain that Moore did not have a gun. Paul Ford, Patricia's husband, also testified that Moore did not have a gun, although Moore was known as a "little brawler."

¶3. Moore testified that he was involved in a physical confrontation with Willis at the

---

[3] Moore is sometimes referred to by the nickname "Fat" in the record.

barbershop earlier in the day. Moore stated that he went to his brother's house following the confrontation. Willis testified that after the confrontation, he went to his brother's house to clean up the blood. Willis also stated that he picked up Michael to take Michael to Willis's grandmother's house. Moore stated that Michael and Willis were outside of his brother-in-law's house; however, Willis maintained that he and Michael were outside on the same street trying to turn around and find a parking spot before entering Willis's grandmother's house.

¶4. Testimony reflects that at some point, Michael got out of the car and exchanged words with Moore. The confrontation continued as Moore and Michael walked down the street. Moore stated that he heard Michael say "shoot, shoot," and that he saw Willis pull a gun. As he turned to run, Willis shot him twice from behind. Tushima Young testified that she saw Moore's uncle Jeffrey remove a gun from Moore's left pocket after he was shot; however, Jeffrey testified that he did not retrieve a gun from Moore's pocket.

¶5. Chief Palmer arrested Willis within minutes of the shooting. Willis first denied shooting Moore; however, his story changed shortly thereafter. Willis claimed that Moore approached him with a gun but that he was able to disarm Moore and that he shot Moore with Moore's gun. Finally, Willis admitted that he thought that Moore had a gun, so Willis shot Moore with a gun that he already had in his possession.

¶6. Following a jury trial, both Michael and Willis were convicted on one count of aggravated assault. The circuit court granted the motion for a directed verdict on the charge of conspiracy. Willis filed a motion for JNOV or to alter or amend the judgment, to vacate

the judgment, or for a new trial. The circuit court denied Willis's motion, and he appeals.

¶7. Willis's counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), asserting that he diligently searched the procedural and factual history of this action and found no arguable issues for review. Willis's trial counsel also requested that the Court grant Willis forty days of additional time to file a pro se brief if Willis desired to do so. In January 2016, this Court entered an order giving Willis an additional forty days to file a pro se supplemental brief. No such brief has been filed to date.

¶8. The State agrees that there are no arguable issues before this Court. Finding no error, we affirm the judgment of the circuit court.

## DISCUSSION

¶9. "In *Lindsey*, th[e Mississippi Supreme] Court outlined a procedure that appellate counsel must follow when they determine that there are no appealable issues in the record." *Allred v. State*, 130 So. 3d 504, 506 (¶6) (Miss. 2014) (citing *Lindsey*, 939 So. 2d at 748 (¶18)). The Court stated as follows:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5)-(8)]; *see also Smith v. Robbins*, 528 U.S. 259, 280-81 (2000) (stating that "counsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case").

> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire

4

trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

¶10. We find that Willis's attorney complied with all of the requirements set forth in *Lindsey*. Counsel's brief states that he "diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Willis's behalf in good faith for appellate review." Counsel asserts that he reviewed: (a) the reason for the arrest and the circumstances surrounding Willis's arrest; (b) any possible violation of Willis's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions including the right to an instruction on Willis's theory of the case; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing; (i) the indictment and all pleadings in the record; (j) any possible ineffective-assistance-of-counsel issues; (k) any speedy trial issues; (l) any 14th Amendment due process issues; (m) any evidence of other bad acts and hearsay testimony; and (n) any other possible

5

reviewable issues. Counsel also states that he mailed Willis a copy of the brief and correspondence informing Willis that he had found no arguable issues. Counsel also informed Willis that he had a right to file a pro se brief and requested that this Court grant Willis forty days of additional time to file a pro se brief if he desired to do so. The Court granted the time but did not receive a pro se brief from Willis.

¶11. After our review of the record, we find that there is sufficient evidence to support Willis's conviction. Willis was convicted of aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a). This Code section states:

> A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) causes any injury to a child who is in the process of boarding or exiting a school bus in the course of a violation of Section 63-3-615; and, upon conviction, he or she shall be punished by imprisonment in the county jail for not more than one (1) year or sentenced to the custody of the Department of Corrections for not more than twenty (20) years.

¶12. The State had to demonstrate that Willis attempted to cause or caused serious bodily harm to Moore with a deadly weapon. Patricia testified that she saw Willis pull a gun and shoot Moore. Paul testified that Willis shot Moore several times after Moore "broke and ran." Willis testified that he shot Moore in self-defense; however, several witnesses testified that Moore did not have a gun. Furthermore, Moore identified Willis as the man who shot him, and Willis admitted to shooting Moore following a confrontation.

6

¶13.   Accordingly, we find that Willis's conviction should be affirmed and that Willis's counsel complied with the Supreme Court's holding in *Lindsey* in submitting his brief.

¶14.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**